**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) Civil Action No. 10-1362 (EGS) |
| v. | ) |
|  | ) |
| DANIEL CHAPTER ONE, | ) |
|  | ) |
| and | ) |
|  | ) |
| JAMES FEIJO, | ) |
|  | ) |
| Defendants. | ) |

## **MEMORANDUM OPINION**

This action involves certain dietary supplements that defendants claim can treat, cure, or prevent cancer, inhibit tumors, and ameliorate the adverse effects of radiation and chemotherapy. Pending before the Court is the government's motion for a preliminary injunction. In its motion, the government asks the Court to preliminarily enjoin Daniel Chapter One and James Feijo (the "defendants") from violating the final cease and desist order issued by the Federal Trade Commission (the "FTC") on January 25, 2010 regarding the marketing of these dietary supplements (the "Modified Final Order"). Plaintiff argues that emergency injunctive relief is necessary in order to "prevent continuing harm to individuals suffering from cancer and other tumors." Pl.'s Mot. at 1. Upon consideration of the motion, the response and reply thereto, the applicable law, and

the limited record currently before the Court, the Court hereby **GRANTS** plaintiff's motion.

I.  **BACKGROUND**

This penalty suit arises from an FTC proceeding, in which defendants were charged with violating §§ 5(a) and 12 of the FTC Act by allegedly engaging in deceptive acts and practices with regards to their marketing of certain dietary supplements. *See* Compl. ¶ 7. Following a trial, an administrative law judge concluded that defendants violated the FTC Act by making unsubstantiated claims that four of the dietary supplements marketed and sold by defendants – BioShark, 7 Herb Formula, GDU, and BioMixx – prevented, treated, or cured tumors or cancer. Compl. ¶ 7.[1] This decision was appealed to the FTC, who subsequently affirmed it. Compl. ¶ 7.

The FTC issued a Final Order to cease and desist practices on December 24, 2009. Compl. ¶ 7. Soon thereafter, on January 25, 2010, the Commission issued a Modified Final Order, *see* Pl.'s Ex. A, which made non-substantive modifications to clarify required time periods in the Final Order. Compl. ¶ 7. Among

---

[1] BioShark is a capsule whose primary ingredient is shark cartilage. Compl. ¶ 10. 7 Herb Formula is a liquid tea concentrate containing, among other things, rhubarb root, sheep sorrel, Siberian ginseng, and cat's claw. Compl. ¶ 10. GDU capsules contain, among other things, bromelain, turmeric, quercetin, feverfew, and boron. Compl. ¶ 10. BioMixx is a powder that contains goldenseal, echinacea, and ginseng. Compl. ¶ 10. The prices of these supplements range from $31 to $72. Compl. ¶ 10.

other things, the Modified Final Order prohibits defendants from representing that BioShark, 7 Herb Formula, GDU, or BioMixx (hereinafter, the "covered products") prevent, treat, or cure any type of tumor or cancer without possessing and relying upon competent and reliable scientific evidence that substantiates the representation. Compl. ¶ 8. The Modified Final Order also requires defendants to send a letter to past purchasers of the covered products informing them of the FTC's conclusion that defendants' advertising claims were deceptive because they lacked substantiation. Compl. ¶ 8. The Modified Final Order was served on defendants on February 1, 2010. Compl. ¶ 7.

On February 25, 2010, defendants applied to the FTC for a stay of the Modified Final Order. This request was denied on March 23, 2010.

Defendants also filed an appeal with the United States Court of Appeals for the District of Columbia Circuit contesting the legality and constitutionality of the Modified Final Order. Defendants argued, among other things, that the FTC's Modified Final Order violates defendants' First Amendment rights and free exercise of religion under the Religious Freedom Restoration Act ("RFRA"). After their request for a stay of the Modified Final Order was denied by the FTC, defendants filed an emergency motion for a stay of the Modified Final Order with the D.C. Circuit.

This motion was denied on April 1, 2010. *See Daniel Chapter One v. FTC*, No. 10-1064 (D.C. Cir. Apr. 1, 2010)

Because defendants failed to obtain a stay, the Modified Final Order became effective on April 2, 2010. *See* Compl. ¶ 7; *see also* 15 U.S.C. § 45(g)(2) ("An order of the Commission to cease and desist shall become final . . . upon the sixtieth day after such order is served, if a petition for review has been duly filed; except that any such order may be stayed, in whole or in part and subject to such conditions as may be appropriate by – (A) the Commission; (B) an appropriate court of appeals of the United States . . . ; or (C) the Supreme Court, if an applicable petition for certiorari is pending.").

On August 13, 2010, the government filed a complaint in this Court seeking civil penalties and other injunctive relief pursuant to §§ 5(l), 13(b), and 16(a) of the FTC Act. Simultaneous therewith, the government also filed a motion for a preliminary injunction seeking an order enjoining defendants from violating the Modified Final Order. The Court denied this request without prejudice on September 14, 2010, finding that the Court lacked jurisdiction to enforce the Modified Final Order while defendants' action challenging the legality of the Modified Final Order was pending before the D.C. Circuit. *See* Order at Docket No. 11; *see also* 15 U.S.C. § 45(d) ("Upon the filing of the record with it, the jurisdiction of the [circuit] court of

appeals of the United States to affirm, enforce, modify, or set aside orders of the Commission shall be exclusive.").[2] The Court then stayed this action pending resolution of defendants' appeal before the D.C. Circuit. *See* Order at Docket No. 11.

Following this Court's denial of its motion for a preliminary injunction, the government filed an emergency motion for an order of enforcement *pendente lite* with the D.C. Circuit. That court granted the government's request on November 22, 2010. *See Daniel Chapter One v. FTC*, No. 10-1064 (D.C. Cir. Nov. 22, 2010) ("Daniel Chapter One is hereby enjoined to obey forthwith the modified final order of the Federal Trade Commission issued January 25, 2010, in Docket No. 9329, *In the Matter of Daniel Chapter One and James Feijo*."). In addition, on December 7, 2010, the D.C. Circuit denied defendants' request for a "partial stay of enforcement order *pendente lite* pending final action by

---

[2] The Court also denied defendants' motion to dismiss, concluding that the government's penalty suit was properly before the Court. *See* 15 U.S.C. § 45(l) (permitting the Attorney General of the United States to file an action to recover civil penalties against "[a]ny person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect"); *see also United States v. Standard Educ. Soc'y*, 55 F. Supp. 189, 193 (N.D. Ill. 1943) ("The Circuit Court of Appeals is vested with exclusive jurisdiction to enforce the Commission's cease and desist orders under Section 5(d), but that court has no jurisdiction over penalty suits. . . . Continuance of the enforcement proceedings in the Circuit Court of Appeals appears to be no bar to the commencement of a penalty suit, if, prior to the commencement of the suit, the Commission's order . . . has become final . . . .").

5

this court and possible review by the U.S. Supreme Court." *Daniel Chapter One v. FTC*, No. 10-1064 (D.C. Cir. Dec. 7, 2010).

Shortly thereafter, on December 10, 2010, the D.C. Circuit denied defendants' petition for review of the Modified Final Order. That court found, among other things, that "the Commission properly exercised jurisdiction over [Daniel Chapter One]" and that "[Daniel Chapter One]'s arguments based upon the Constitution and the Religious Freedom Restoration Act are wholly without merit." *See Daniel Chapter One v. FTC*, 405 Fed. Appx. 505, 506 (D.C. Cir. 2010). Defendants then filed a petition for writ of certiorari, which was denied on May 23, 2011. *See Daniel Chapter One v. FTC*, 79 U.S.L.W. 3661 (U.S. May 23, 2011) (No. 10-1292).

Following issuance of the D.C. Circuit's mandate, plaintiff filed a motion to lift the stay in this case. The Court granted this motion on March 7, 2011. Plaintiff subsequently renewed its request for a preliminary injunction.[3] This motion is now ripe for determination by the Court.[4]

---

[3] After plaintiff filed its renewed motion for a preliminary injunction, defendants filed a motion to stay proceedings. In their motion, defendants sought, among other things, to have all proceedings in this action stayed pending completion of a federal criminal investigation of Mr. Feijo in the State of Rhode Island, and disposition of any resulting indictments and prosecutions. *See* Defs.' Mot. to Stay at 1. The Court denied this motion without prejudice during a hearing held on May 10, 2011.

[4] Due to proceedings related to defendants' motion to stay, plaintiff's motion for a preliminary injunction did not become ripe until June 6, 2011.

6

## II. STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

The FTC Act provides for an injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest[.]" 15 U.S.C. § 53(b). This standard departs from the traditional equity standard for preliminary injunctive relief.[5] *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 714 (D.C. Cir. 2001) (explaining that "Congress determined that the traditional standard was not appropriate for the implementation of a Federal statute by an independent regulatory agency where the standards of the public interest measure the propriety and

---

[5] Generally, in deciding whether to grant interim injunctive relief, the Court must evaluate whether: "(1) the plaintiff has a substantial likelihood of success on the merits; (2) the plaintiff would suffer irreparable injury were an injunction not granted; (3) an injunction would substantially injure other interested parties; and (4) the grant of an injunction would further the public interest." *Ark. Dairy Coop. Ass'n v. United States Dep't of Agric.*, 573 F.3d 815, 821 (D.C. Cir. 2009) (citing *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)). Although these four factors have typically been evaluated on a "sliding scale" – whereby if the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor, *see Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291-92 (D.C. Cir. 2009) – it is unclear whether this sliding-scale approach is still controlling in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Council*, 129 S.Ct. 365, 374 (2008). *See Sherley v. Sebelius*, No. 10-5287, 2011 U.S. App. LEXIS 8686, at *10-12 (D.C. Cir. Apr. 29, 2011) (discussing the circuit split on the issue of whether *Winter* precludes continuing adherence to the sliding-scale approach, then concluding that "[w]e need not wade into this circuit split today because . . . in this case a preliminary injunction is not appropriate even under the less demanding sliding-scale analysis").

7

the need for injunctive relief" (internal quotation marks omitted)). "[T]o obtain a § 53(b) preliminary injunction, the FTC need not show any irreparable harm, and the 'private equities' alone cannot override the FTC's showing of likelihood of success." *FTC v. Whole Foods Mkt.*, 548 F.3d 1028, 1034-35 (D.C. Cir. 2008) (citing *FTC v. Weyerhaeuser Co.*, 665 F.2d 1072, 1082 (D.C. Cir. 1981)). Instead, the court must balance the likelihood of the FTC's success against the equities, under a sliding scale. *Id.* (citing cases).[6]

**III. ANALYSIS**

The government argues that a preliminary injunction is warranted because it has a substantial likelihood of success on the merits and the equities weigh strongly in favor of such interim relief. Specifically, with regards to the likelihood of success on the merits, the government asserts that "Defendants have violated, and continue to violate, the Order in two ways. First, they refuse to send a letter to purchasers of the Products, that Part V.B of the Order required Defendants to send nearly ten months ago.[7] Second, the Defendants continue to make

---

[6] Plaintiff alternatively argues that "an injunction would be appropriate even if the Court were to apply the traditional four-factor test when evaluating the Motion." Pl.'s Mot. at 7. As discussed herein, *see* n.10, this Court agrees.

[7] Part V.B of the Modified Final Order states that "[w]ithin forty-five (45) days after the final and effective date of this order, Respondents shall send by first class mail, postage prepaid, an exact copy of the notice attached as Attachment A to all persons [who purchased the Products on or after January 1,

representations in violation of Part II of the Order, including by soliciting and using endorsements to make these prohibited claims." Pl.'s Mot. at 9.[8]  Next, with regards to the equities,

---

2005]." *See* Pl.'s Ex. A at 3.  Attachment A, in turn, contains the following letter:

> Dear [Recipient]:
>
> Our records show that you bought [names of products] from our website [name of website] or through a call center using our toll-free number. We are writing to tell you that the Federal Trade Commission ("FTC") has found our advertising claims for these products to be deceptive because they were not substantiated by competent and reliable scientific evidence, and the FTC has issued an Order prohibiting us from making these claims in the future.  The Order entered against us by the FTC requires that we send you the following information from the FTC about the scientific evidence on these products:
>
>> Competent and reliable scientific evidence does not demonstrate that any of the ingredients in BioShark, 7 Herb Formula, GDU or BioMixx, are effective when used for prevention, treatment or cure of cancer. It is important that you talk to your doctor or health care provider before using any herbal product in order to ensure that all aspects of your medical treatment work together. Some herbal products may interfere or affect your cancer or other medical treatment, may keep your medicines from doing what they are supposed to do, or could be harmful when taken with other medicines, or in high doses.
>>
>> It is also important that you talk to your doctor or health care provider before you decide to take any herbal product instead of taking cancer treatments that have been scientifically proven to be safe and effective in humans.
>
> Sincerely,

Pl.'s Ex. A at 7.

[8]     Part II of the Modified Final Order states that: "IT IS HEREBY ORDERED that Respondents, directly or through any corporation, partnership, subsidiary, division, trade name, or

9

the government asserts that "[t]he very real, imminent, and substantial harms that cancer patients face as a result of Defendants' misleading claims outweigh any equities that Defendants may claim support their position." Pl.'s Mot. at 21. Relatedly, the government asserts that the issuance of emergency injunctive relief is in the public interest, arguing, among other things, that "there is great public interest in preventing the harm that arises when those who have been previously deceived by Defendants' representations do not receive corrective information and continue to use the unproven products Defendants market." Pl.'s Mot. at 22.

---

other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of BioShark, 7 Herb Formula, GDU, and BioMixx, or any substantially similar health-related program, service, or product, or any other Covered Product or Service, in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, including through the use of product or program names or endorsements, that such health-related program, service, product, or Covered Product or Service prevents, treats, or cures or assists in the prevention, treatment, or cure of any type of tumor or cancer, including but not limited to representations that:
    1. BioShark inhibits tumor growth;
    2. BioShark is effective in the treatment of cancer;
    3. 7 Herb Formula is effective in the treatment or cure of cancer;
    4. 7 Herb Formula inhibits tumor formation;
    5. GDU eliminates tumors;
    6. GDU is effective in the treatment of cancer;
    7. BioMixx is effective in the treatment of cancer; or
    8. BioMixx heals the destructive effects of radiation or chemotherapy;
unless the representation is true, non-misleading, and, at the time it is made, Respondents possess and rely upon competent and reliable scientific evidence that substantiates the representation." Pl.'s Ex. A at 2.

Defendants do not object to or otherwise respond to any of these arguments. Instead, the only argument raised in defendants' 3-page opposition brief is the contention that it is "inappropriate" for this Court to issue a preliminary injunction in light of the government's failure to seek an enforcement order from the D.C. Circuit. *See* Defs.' Opp'n at 1 ("The FTC had the opportunity in the Court of Appeals to seek the same enforcement orders it now seeks in this Court. . . . [T]he FTC did not seek a permanent order against DCO or James Feijo which was within the statutory power of the Court of Appeals to issue. In light of the FTC's failure to seek those orders before that court of competent jurisdiction, wherein an action was pending and adjudicated, it is inappropriate for the FTC to ask this Court to now issue the orders."). The Court finds this argument unpersuasive.

As noted by the government, the FTC Act expressly provides district courts with the authority to "grant mandatory injunctions and such other and further equitable relief as they deem appropriate in the enforcement of such final orders of the Commission." Pl.'s Reply at 4-5 (quoting 15 U.S.C. § 45(l)). The order at issue in this case became final on April 2, 2010, and appellate review is now complete. This Court, therefore, is the appropriate forum for the government to seek emergency

injunctive relief in support of its enforcement action for civil penalties.

Accordingly, in the absence of any other objection from defendants, the Court concludes that interim injunctive relief is warranted. As discussed briefly below, the Court finds that the government is substantially likely to succeed on the merits, and that the balance of equities support granting an interim injunction.

With regards to the merits of this enforcement action, the Court concludes that the government is likely to demonstrate that defendants have violated the Modified Final Order.[9] First, in view of the fact that defendants admitted during the hearing held on May 9, 2011 that they had not yet sent the letters required by Part V.B of the Modified Final Order, the Court concludes that the government is likely to establish that defendants violated Part V.B of the Modified Final Order. *See also* Pl.'s Mot. at 9-

---

[9] The FTC Act entrusts the administration of the Act to the FTC as "a body of experts." *FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948). "The enforcement responsibility of the courts, once a Commission order has become final . . . is to adjudicate questions concerning the order's violation, not questions of fact which support that valid order." *Id.* (internal citations omitted); *see also United States v. H. M. Prince Textiles, Inc.*, 262 F. Supp. 383, 388 (S.D.N.Y. 1966) ("[I]t is well settled that a defendant cannot attack a final cease and desist order in a subsequent enforcement proceeding."). Accordingly, in considering the government's likelihood of success on the merits, the Court need only determine whether defendants likely violated the Modified Final Order. *See H. M. Prince Textiles, Inc.*, 262 F. Supp. at 388 (explaining that in an action by the government to recover civil penalties "[a]ll that the government need prove is that a cease and desist order has in fact been violated").

12 and the exhibits cited therein. In addition, and substantially for the reasons set forth in the government's motion, the Court finds that the government is likely to establish that defendants violated Part II of the Modified Final Order by soliciting and using endorsements to make prohibited representations regarding the covered products. *See* Pl.'s Mot. at 12-21 and the exhibits cited therein (discussing defendants' representations and endorsements on the Daniel Chapter One Censored radio show as well as in various online forums and websites).

The Court further finds that the equities weigh in favor of emergency injunctive relief. Specifically, and in view of the fact that plaintiff is likely to succeed on the merits, the Court finds that there is no strong interest in not granting the preliminary relief sought here. Indeed, the Court agrees that "'[t]here is no hardship to [defendants] in requiring them merely to follow the law - to refrain from making misrepresentations to consumers they contact.'" Pl.'s Mot. at 21 (quoting *FTC v. City West Advantage, Inc.*, No. 08-609, 2008 WL 2844696, at *6 (D. Nev. July 22, 2008)). By contrast, the Court finds that there is a significant public interest in preventing the harms that result when (i) "consumers forego beneficial and effective therapy for untested therapies such as those Defendants promote"; (ii) "consumers risk their health to potential side effects and

harmful interactions between the Products and other therapies"; and (iii) "those who have been previously deceived by Defendants' representations do not receive corrective information and continue to use the unproven Products Defendants market." Pl.'s Mot. at 22. This is particularly true in light of the fact that defendants "target" their advertising messages to cancer patients and their families. Pl.'s Mot. at 21-22. The equities, therefore, weigh strongly in favor of protecting these vulnerable consumers from defendants' representations.[10]

---

[10] Although the Court finds that the government does not need to establish irreparable harm when seeking injunctive relief under the FTC Act, *see supra* Section II, the Court nevertheless agrees that consumers will suffer irreparable harm if injunctive relief is not granted. As the government explains: "Defendants have no competent and reliable scientific evidence that substantiates their claims that the Products can prevent, treat, or cure cancer, inhibit tumors, or ameliorate the adverse effects of radiation and chemotherapy. . . . Irreparable harm arises if consumers forego beneficial and effective therapy for untested therapies such as those Defendants promote. Irreparable harm arises when consumers risk their health to potential side effects and harmful interactions between the Products and other therapies. Irreparable harm arises when those who have been previously deceived by Defendants' representations do not receive corrective information and continue to use the unproven Products Defendants market. This harm is not theoretical. These representations can be made and accessed at any time on these websites and online forums. Defendants make these representations on their radio show, which airs every Monday through Friday for two hours each day. This irreparable harm is ongoing, and imminent." Pl.'s Mot. at 23-24. The Court therefore concludes that interim injunctive relief would be appropriate even if the traditional four-part equity standard applies, as plaintiff has demonstrated, "by a clear showing," that the requested relief is warranted. *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

**IV. CONCLUSION**

The Modified Final Order at issue in this case became final on April 2, 2010. Defendants' attempts to have the order set aside have been rejected by both the D.C. Circuit and the United States Supreme Court. Accordingly, having weighed the equities and considered the plaintiff's likelihood of success on the merits, the Court concludes that it is in the public interest to preliminarily enjoin defendants from violating the Modified Final Order. Plaintiff's motion for a preliminary injunction is therefore **GRANTED**. A separate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan
             United States District Judge
             June 22, 2011**