**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 10-1362 (EGS) |
| DANIEL CHAPTER ONE, | ) | |
| and | ) | |
| JAMES FEIJO, | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff United States brings this action against Daniel Chapter One and James Feijo ("Defendants") under Sections 5(l), 13(b), and 16(a) of the Federal Trade Commission Act, 15 U.S.C. §§ 45(l), 53(b), and 56(a), alleging that Defendants have violated a final cease and desist order of the Federal Trade Commission ("FTC" or the "Commission"). Pending before the Court is the United States' Motion for Summary Judgment on Liability. The United States requests that the Court find that Defendants have violated the FTC's order and accordingly are liable for civil penalties, injunctive relief, and consumer redress. Upon consideration of the motion, the opposition and reply thereto, the relevant case law, and the entire record in

this case, the Court will **GRANT** the United States' Motion for Summary Judgment on Liability.

## I.   BACKGROUND[1]

Defendant Daniel Chapter One is incorporated under the laws of the State of Washington, with its principal place of business in Portsmouth, Rhode Island.  *See* Pl.'s SMF ¶ 1.  Defendant James Feijo is the sole member and overseer of Daniel Chapter One.  Pl.'s SMF ¶ 2.  Defendants advertise and sell dietary supplements, including BioShark, 7 Herb Formula, GDU, and BioMixx (the "Products"), which Defendants claim can treat, cure, or prevent cancer.  Pl.'s SMF ¶¶ 3-4.

### A.   Procedural Background

On September 18, 2008, the FTC initiated an administrative proceeding alleging that Defendants' marketing of the Products constituted deceptive acts and practices in violation of Sections 5(a) and 12 of the Federal Trade Commission Act (the "FTC Act"), 15 U.S.C. §§ 45(a) and 52.  Pl.'s SMF ¶¶ 4-5. Following a trial, an administrative law judge concluded that Defendants had violated the FTC Act by making unsubstantiated claims that the Products prevented, treated, or cured tumors or cancer.  Pl.'s SMF ¶ 6.  Defendants appealed this decision to

---

[1] The facts are substantially derived from Plaintiff's Statement of Material Facts Not in Genuine Dispute (hereinafter, "Pl.'s SMF"); these facts are undisputed, unless otherwise indicated.

the Commission, and on December 24, 2009, the Commission upheld the decision and issued a Final Order to cease and desist certain practices.  Pl.'s SMF ¶¶ 7-8.

On January 25, 2010, the FTC issued a Modified Final Order, copies of which were served on Defendants and their attorneys on January 29, January 30, and February 1, 2010.  Pl.'s SMF ¶¶ 9-10; *see also* Pl.'s Mem. in Supp. of Mot. for Summ. J. on Liability (hereinafter, "Pl.'s MSJ"), Exs. D and V.  Part II of the Modified Final Order prohibits Defendants (referred to in the Modified Final Order as "Respondents") from making "any representation, in any manner, expressly or by implication, including through the use of product or program names or endorsements"[2] that any product marketed by Defendants:

> [P]revents, treats, or cures or assists in the prevention, treatment, or cure of any type of tumor or cancer, including but not limited to representations that:
> 1. BioShark inhibits tumor growth;
> 2. BioShark is effective in the treatment of cancer;
> 3. 7 Herb Formula is effective in the treatment or cure of cancer;
> 4. 7 Herb Formula inhibits tumor formation;
> 5. GDU eliminates tumors;
> 6. GDU is effective in the treatment of cancer;
> 7. BioMixx is effective in the treatment of cancer; or
> 8. BioMixx heals the destructive effects of radiation

---

[2] The Modified Final Order states that the term "endorsement" shall be defined as in 16 C.F.R. § 255.0(b), which states that "an endorsement means any advertising message . . . that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser."  16 C.F.R. § 255.0(b).

> or chemotherapy;
> unless the representation is true, non-misleading, and, at
> the time it is made, Respondents possess and rely upon
> competent and reliable scientific evidence that
> substantiates the representation.

Pl.'s SMF ¶ 11; *see also* Pl.'s MSJ, Ex. D, at 2.  In addition,

Part V.B of the Modified Final Order requires that:

> Within forty-five (45) days after the final and effective
> date of this order, Respondents shall send by first class
> mail, postage prepaid, an exact copy of the notice . . . to
> all persons [who purchased the Products between January 1,
> 2005 and the date of the order.]

Pl.'s SMF ¶ 12; *see also* Pl.'s MSJ, Ex. D, at 3.  The notice,

which is attached to the Modified Final Order, informs consumers

of the FTC's conclusion that Defendants' advertising claims were

deceptive because they were not substantiated by competent and

reliable scientific evidence.  *See* Pl.'s MSJ, Ex. D, at 7.

Defendants filed an appeal with the United States Court of

Appeals for the District of Columbia Circuit, contesting the

legality and constitutionality of the Modified Final Order.  *See*

Pl.'s SMF ¶ 13; Petition for Review, *Daniel Chapter One v. FTC*,

No. 10-1064 (D.C. Cir. Mar. 17, 2010).  Defendants also applied

to the FTC for a stay of the Modified Final Order pending the

outcome of their appeal, but their request was denied.  Pl.'s

SMF ¶ 14.  Defendants then filed with the D.C. Circuit an

emergency motion for a stay of the Modified Final Order.  This

motion was denied on April 1, 2010.  *See* Per Curiam Order

Denying Emergency Motion to Stay Case, *Daniel Chapter One*, No.

10-1064 (D.C. Cir. Apr. 1, 2010); *see also* Pl.'s MSJ, Ex. F.
Because Defendants failed to obtain a stay, the Modified Final
Order became effective on April 2, 2010.  *See* Pl.'s MSJ at 4;
*see also* 15 U.S.C. § 45(g)(2) ("An order of the Commission to
cease and desist shall become final . . . upon the sixtieth day
after such order is served, if a petition for review has been
duly filed; except that any such order may be stayed, in whole
or in part and subject to such conditions as may be appropriate,
by -- (A) the Commission; (B) an appropriate court of appeals of
the United States . . . ; or (C) the Supreme Court, if an
applicable petition for certiorari is pending.").

On August 13, 2010, the United States filed its Complaint
in this Court seeking civil penalties and other injunctive
relief pursuant to §§ 5(l), 13(b), and 16(a) of the FTC Act.
Simultaneous therewith, the United States filed a Motion for a
Preliminary Injunction seeking an order enjoining Defendants
from violating the Modified Final Order.  Pl.'s SMF ¶ 16.  The
Court denied the United States' Motion for a Preliminary
Injunction without prejudice on September 14, 2010, finding that
the Court lacked jurisdiction to enforce the Modified Final
Order while Defendants' appeal challenging the legality of the
Modified Final Order was pending before the D.C. Circuit.  *See*

Order, Sept. 14, 2010, Docket No. 11.[3]  The FTC then filed an emergency motion for an order of enforcement *pendente lite* with the D.C. Circuit.  The Circuit granted the United States' motion on November 22, 2010.  *See* Per Curiam Order, *Daniel Chapter One*, No. 10-1064 (D.C. Cir. Nov. 22, 2010) ("Daniel Chapter One is hereby enjoined to obey forthwith the modified final order of the Federal Trade Commission issued January 25, 2010, in Docket No. 9329, *In the Matter of Daniel Chapter One and James Feijo*."); *see also* Pl.'s SMF ¶ 17.  Defendants then filed a motion with the D.C. Circuit seeking a stay of the enforcement of Part V.B of the Modified Final Order.  The D.C. Circuit rejected this request on December 7, 2010.  *See* Per Curiam Order, *Daniel Chapter One*, No. 10-1064 (D.C. Cir. Dec. 7, 2010); Pl.'s SMF ¶ 18.

---

[3] The Court also denied Defendants' Motion to Dismiss, concluding that the United States' penalty suit was properly before the Court.  *See* 15 U.S.C. § 45(l) (permitting the Attorney General of the United States to file an action to recover civil penalties against "[a]ny person, partnership, or corporation who violates an order of the Commission after it has become final, and while such order is in effect"); *see also United States v. Standard Educ. Soc'y*, 55 F. Supp. 189, 193 (N.D. Ill. 1943) ("The Circuit Court of Appeals is vested with exclusive jurisdiction to enforce the Commission's cease and desist orders under Section 5(d), but that court has no jurisdiction over penalty suits. . . . Continuance of the enforcement proceedings in the Circuit Court of Appeals appears to be no bar to the commencement of a penalty suit, if, prior to the commencement of the suit, the Commission's order . . . has become final . . . .").

On December 10, 2010, the D.C. Circuit denied Defendants'
petition for review of the Modified Final Order, concluding that
"the Commission properly exercised jurisdiction over [Daniel
Chapter One]," and that "[Daniel Chapter One]'s arguments based
upon the Constitution and the Religious Freedom Restoration Act
are wholly without merit." *Daniel Chapter One v. FTC*, 405 F.
App'x 505, 505-06 (D.C. Cir. 2010).  Defendants then filed a
petition for a writ of certiorari, which was denied on May 23,
2011.  *See Daniel Chapter One v. FTC*, No. 10-1292, 131 S. Ct.
2917 (2011).

Following issuance of the D.C. Circuit's mandate, the
United States renewed its Motion for a Preliminary Injunction in
this Court.  In addition, Defendants filed a Motion to Stay the
proceedings pending completion of a federal criminal
investigation, and disposition of any resulting indictments and
prosecutions, of James Feijo and Daniel Chapter One in the State
of Rhode Island.  *See* Defs.' Mot. to Stay, Docket No. 22.  The
Court denied Defendants' Motion to Stay without prejudice during
a hearing held on May 9, 2011.  On June 22, 2011, the Court
granted the United States' Motion for Preliminary Injunction and
enjoined Defendants from violating the FTC's Modified Final
Order.  *See* Order and Memorandum Opinion, Docket Nos. 31 and 32.

On July 29, 2011, the United States filed a Motion for an
Order to Show Cause why Daniel Chapter One, James Feijo, and

7

Patricia Feijo[4] should not be held in contempt of the Court's
June 22, 2011 Order.  The Court subsequently ordered Defendants
to show cause why they should not be held in contempt.  The
Court held a contempt hearing on May 9, 2012.  During that
hearing, the United States presented evidence and testimony
regarding Defendants' purported violations of the Modified Final
Order.  After receiving evidence and hearing argument, the Court
found Daniel Chapter One, James Feijo, and Patricia Feijo in
civil contempt.  Specifically, the Court concluded that James
Feijo, Patricia Feijo, and Daniel Chapter One (the "Contemnors")
had continued to violate the Modified Final Order by
(1) continuing to make representations on their radio show that

---

[4] Although Patricia Feijo is not a defendant in this action,
the United States argued that she was bound by the preliminary
injunction pursuant to Federal Rule of Civil Procedure 65(d)(2),
which provides that a preliminary injunction binds:

   (A)  the parties;
   (B)  the parties' officers, agents, servants, employees,
        and attorneys; and
   (C)  other persons who are in active concert or
        participation with anyone described in Rule
        65(d)(2)(A) or (B) as long as those individuals
        "receive actual notice of it by personal service or
        otherwise[.]"

Fed. R. Civ. P. 65(d)(2).  The United States argued that
Patricia Feijo received actual notice of the Order and that she
was "in active concert or participation" with James Feijo and
Daniel Chapter One.  *See* Pl.'s Mem. of Law in Supp. of Mot. for
Order to Show Cause at 11.  Defendants also do not dispute that
Patricia Feijo is an agent, representative, or employee of
Daniel Chapter One.  *See* Pl.'s SMF ¶ 50; Defs.' Statement of
Genuine Issues ¶ 50, Docket No. 42-2.

their products treat or cure cancer without competent and reliable scientific evidence to substantiate those representations, (2) encouraging potential customers to visit websites containing Daniel Chapter One publications that contain prohibited information and endorsements of the prohibited supplements, (3) not removing certain representations from the websites within their control, which Contemnors conceded included www.danielchapterone.com, www.dc1ministry.com, and www.dc1freedom.com, and (4) failing to mail the required notice to all consumers who purchased the Products between January 1, 2005, and April 2, 2010.[5]  The Court allowed the Contemnors two weeks to attempt to purge the contempt and scheduled another hearing in order to determine whether or not the contempt had been purged.

On May 22, 2012, James Feijo submitted a certification of compliance with the Court's Order.  In that certification, Mr. Feijo stated that all notices had been sent out in compliance with the Court's order; that prohibited representations had been removed from www.dc1freedom.com, www.danielchapterone.com, the dc1 online store, and www.dc1ministry.com; that Contemnors had ceased answering health questions on their radio show or

---

[5] Because neither party has requested an official transcript of the May 9, 2012 contempt hearing, the Court relies on its own notes and recollections, as well as draft versions of the hearing transcript.

inviting other callers to answer questions; and that Contemnors
were not mentioning other people's websites containing Daniel
Chapter One information.  *See* James Feijo's Certification of
Compliance at 2-4, Docket No. 51.  At a subsequent hearing on
May 23, 2012, the United States presented additional evidence
that Contemnors had not purged the contempt, but the Court gave
Contemnors until May 24, 2012 at 3:30 p.m. to make a showing to
the Court sufficient to demonstrate their compliance with the
Court's Order.  On May 24, 2012, Defendants filed a Supplemental
Certification of Compliance with the Court's Order, and the
United States filed a Notice of Failure to Purge.  *See* Defs.'
Supplemental Certification of Compliance with Order, Docket No.
52; Pl.'s Notice of Failure to Purge, Docket No. 53.  The Court
determined that Contemnors had taken sufficient actions to purge
themselves of contempt, and therefore the Court vacated its
Contempt Order.  Minute Order, May 24, 2012.

On September 30, 2011, the United States filed a Motion for
Summary Judgment on Liability.  That motion is ripe for
determination by the Court.

### B.   Violations of the Modified Final Order

The United States alleges that Defendants have made
prohibited representations on their radio show and on websites
within their control without possessing competent and reliable
scientific evidence.

1.   **Websites**

According to the United States, from April 2, 2010 through June 6, 2011, Defendants controlled the website www.dc1freedom.com/guilty-of-healing-cancer.  Pl.'s SMF ¶ 21. That website contained textual content asserting that Daniel Chapter One had healed people of cancer, specifically, the web page was titled "Guilty of Healing Cancer" and it stated, "Daniel Chapter One World Ministry for Jesus Christ found guilty of healing people of cancer!"  Pl.'s SMF ¶¶ 22-24; *see also* Pl.'s MSJ, Ex. K.  The United States also alleges that Defendants and their associates have established online forums and groups where treatment advice is provided.  For example, the United States contends -- and Defendants dispute -- that Daniel Chapter One controlled and had administrative privileges over the content on the online forum http://dc1fellowship.com.  Pl.'s SMF ¶ 25.  That forum contains a post requesting information about treating throat cancer.  In response, a user named David states: "[t]o help in healing cancer, we believe the Lord has provided the following products," and then David provided dosing information for 7 Herb Formula, Bio Shark, and GDU.  The post by David is dated July 16, 2010, and it appeared on the website http://dc1fellowship.com/forum/viewtopic.php?f=1&t=291 from July 16, 2010 through June 6, 2011.  Pl.'s SMF ¶¶ 26-27; *see also* Pl.'s MSJ, Ex. L.  Additionally, the United States alleges --

and Defendants dispute -- that Defendants controlled and had administrative privileges to remove the content on the website http://healthfellowship.org.  Pl.'s SMF ¶ 28.  That website contains a forum post requesting advice about treating pancreatic cancer, along with a response from the user David on September 21, 2010, stating, "[f]or cancer, we believe the Lord has provided the following products to help with healing," and listing dosing information for 7 Herb Formula, Bio Shark, and GDU.  Pl.'s SMF ¶¶ 29-30; *see also* Pl.'s MSJ, Ex. M.

Finally, the United States asserts -- and Defendants dispute -- that Defendants controlled the content published on http://health.groups.yahoo.com/group/danielchapterone/files/ (the "Yahoo Group").  Pl.'s SMF ¶ 31.  As discussed in more detail *infra*, Section I.B.2., the Yahoo Group has also been promoted on Defendants' radio show.  The Yahoo Group contains several Daniel Chapter One publications that can be downloaded, including "The Most Simple Guide to the Most Difficult Diseases" (the "Guidebook") and a publication titled "Cancer Newsletter, Millennium Edition, 2002" (the "Cancer Newsletter").  *See* Pl.'s MSJ, Ex. N.  The Guidebook was available on the Daniel Chapter One Yahoo Group from January 2, 2011 through June 6, 2011.  Pl.'s SMF ¶ 33.  The "Introduction" to the Guidebook states that it contains "protocols we used successfully," and that "[m]any have testified that these basic protocols are effective, when

12

adhered to as part of an overall health plan." Pl.'s SMF ¶ 34; *see also* Pl.'s MSJ, Ex. O.  A page within the Guidebook titled "CANCER" lists 7 Herb Formula, Bio Shark, BioMixx, and GDU Caps as "the most essential products" for treating cancer.  Pl.'s SMF ¶ 35; *see also* Pl.'s MSJ, Ex. P.  The Cancer Newsletter was also available on the Daniel Chapter One Yahoo Group from January 10, 2011 through June 6, 2011.  This publication contains information about using Defendants' products to treat and cure cancer, as well as stories about individuals who have allegedly used Daniel Chapter One products successfully to treat cancer. For example, the Cancer Newsletter states, "Daniel Chapter One GDU Caps contain[] proteolytic enzymes that metabolize protein and can aid the body in breaking down a tumor[,]" "7 Herb Formula helps battle cancer[,]" "[BioMixx] is used to assist the body in fighting cancer and in healing the destructive effects of radiation and chemotherapy treatments."  Pl.'s SMF ¶¶ 36-37; *see also* Pl.'s MSJ, Ex. Q.

### 2.   Radio Show

In addition, Defendants provide information on their radio show about using their products to treat or cure cancer, and they solicit endorsements from others by encouraging listeners to call the show and answer health questions.  The United States asserts that Defendants controlled the audio content published on http://feeds.thepodzone.com/dc1hw from April 2, 2010 through

June 6, 2011.  Pl.'s SMF ¶ 38.  This website contains recordings

of Defendants' past radio shows.  The United States has also

preserved recordings of these shows on CD and filed them with

the Court.  For example, in a show broadcast on May 27, 2010,

Defendants had the following conversation with a caller named

Phil:

> PHIL: I've been diagnosed with Stage 4 lung cancer with
> lymph node involvement and I had a brain tumor, which they
> did gamma knife surgery on and that resolved that.
> JAMES FEIJO: Yeah.
> PHIL: But it's gotten into the central lymph nodes.  I have
> a reoccurring tumor in the left lung and two smaller tumors
> in the right lung.  What would be -- what would be -- you
> know, what would work for that?  Is there anything that you
> have that would [inaudible]?
> JAMES FEIJO: Well, did they tell you they've never had a
> successful -- they've never had a person survive lung
> cancer with their treatments?
> PHIL: Pretty much. Pretty much that's what the doctor said.
> JAMES FEIJO: Yeah.
> PATRICIA FEIJO: Yeah.
> PHIL: He suggested chemo starting next week.
> JAMES FEIJO: Yeah, that's a waste of time.
> PATRICIA FEIJO: Well, yeah, the most recent studies that we
> have looked at, they actually had come to the conclusion
> that the chemotherapy and radiation for lung cancer doesn't
> extend life, it does the opposite.
> JAMES FEIJO: We really need to have somebody call in right
> now. This is --
> PATRICIA FEIJO: Yeah, we can't tell you, Phil --
> JAMES FEIJO: -- very important.
> PATRICIA FEIJO: -- what we would do only because we're
> under a cease and desist order right now from the FTC.
> It's quite an evil order.  But it's prohibiting us from
> free speech right now.

Pl.'s SMF ¶ 41; see also Pl.'s MSJ, Ex. R, at 14:35-15:42.

James Feijo went on to state: "You know, Phil, there's so many

people, I give you this statement here -- many, many people, we

have, in just two months we gathered about eight inches high of

affidavits of people with all types of cancers and illnesses

that were supposed to be dead, who were told that they had

nothing that could be done for them.  They're still alive,

they're free of their cancers. . . . We do have someone calling

in with an answer for you."  Pl.'s MSJ, Ex. R, at 15:55-16:30.

Later, with the caller Phil still on the line, Defendants

accepted a call from a caller named Bob, who discussed what

Defendants' products had done for his family, and then stated:

> BOB: Since you're in advanced stage -- that's what it
> sounds like.
> PHIL: Stage 4.
> BOB: Yep.
> JAMES FEIJO: Yeah.
> BOB: Okay, yeah, that's advanced.  All right.  Right now
> first thing, 7 Herb Formula.  You want to do a half to
> three-quarters of a bottle for the first three to four
> days.
> PHIL: One-half to three-quarters --
> JAMES FEIJO: Yeah, don't worry about writing it down, Phil.
> The producer's going to be writing it down and give it to
> you later.  So, we'll just let Bob share it with you, okay?
> PHIL: Oh, okay.  Okay, all right.
> JAMES FEIJO: Yeah.
> BOB: Okay. And then after this, Phil, do about four ounces
> four times a day for about two weeks.
> PHIL: Uh-huh.
> BOB: After that four ounces a day, until -- until you're
> cured.
> PHIL: Okay.
> BOB: The second item would be GDU.  That's for inflammation
> and pain you might be having.  I'd do three to six capsules
> three times a day.  But you have to do them a half-hour
> before meals.
> PHIL: Mm-hmm, okay.
> BOB: One other thing, since, like I said, it's in your
> lungs and your lymph nodes and you have tumors, I'd get on
> the BioShark.  I'd do at least four -- four capsules three

times a day with meals.  And one other thing, it's very
important, what they told my cousin, Bob, also, was to do -
- get the BioMixx and do about four to five scoops, like I
say, in soy milk, two times a day.
JAMES FEIJO: Are you losing weight there, Phil, at all or--
PHIL: I've probably lost seven or eight, maybe ten pounds.
JAMES FEIJO: And how about the energy level here?
PHIL: It's decreased.
JAMES FEIJO: Okay.  If there's no BioMixx because of the
government, 1st Kings would be great and you can do four or
five scoops of that, two to three times a day in place of
meals, you know.

Pl.'s SMF ¶ 41; *see also* Pl.'s MSJ, Ex. R, at 19:25-21:20.

Later in the broadcast, James Feijo stated:

JAMES FEIJO: Phil, what Bob's saying is what we see quite
often.  People will start doing the guidelines that Bob
just mentioned.  They'll be doing great, they'll be doing
terrific.  We've seen it I can't tell you how many times,
Phil.  Well, we don't know if God's going to use this to
heal you or not.  We don't know God's will, you know?
PHIL: Exactly.
JAMES FEIJO: We know -- we know that as soon as you -- see,
let me share one thing.  The suggestions Bob just gave you,
Phil, everybody listening, are suggestions to boost God's
order that he has given us, our immune system, to fight the
disease state of any situation.  Okay?

Pl.'s SMF ¶ 41; *see also* Pl.'s MSJ, Ex. R, at 22:54-23:34.

Subsequently, the radio show took another call, and a caller

named Doug provided information about 7 Herb Formula and

BioShark.  Pl.'s MSJ, Ex. R, at 28:20-29:17.  In response to

Doug's comments about BioShark, James Feijo stated:

JAMES FEIJO: I'll share an interesting thing with you all
concerning the issue of the BioShark.  We had a gentleman
come in. He had Gulf War -- not Gulf War, he was Agent
Orange exposed.  They gave him -- they put him on Hospice.
Four years ago, he was supposed to die and his tumor
starting shrinking using the advice that you've been given
here or are being given, too.  And then he came in and he

16

said, oh, I went back and they said -- they showed a little
enlargement.  So, I asked him what was going on.  He said,
well, I -- I was doing so well, I cut back on the BioShark.
So, it's interesting that he had that kind of response.
But it is about blood supply, you see?
PHIL: Right.
JAMES FEIJO: And, so -- my wife's worried that -- you know,
this is --
PATRICIA FEIJO: Well, I want to --
JAMES FEIJO: See, this is the problem with the Nazis that
we're -- yes, Trish!
DOUG: Well, that's what I would have told him.  I mean, I
didn't know about the Gulf War guy, but shutting the blood
supply off to the tumor is really a very important thing.

Pl.'s SMF ¶ 41; *see also* Pl.'s MSJ, Ex. R, at 29:18-30:26.  At

the end of this conversation, James Feijo instructed Phil to

join the online fellowship, and Patricia Feijo told him that "if

you want to just order product, you can do that at the 800

number or online."  Pl.'s SMF ¶ 41; *see also* Pl.'s MSJ, Ex. R,

at 40:04-40:34.  James Feijo's wife, Patricia Feijo, then

provided the full phone number for individuals to call and

stated, "you can get 7 Herb Formula. You can get GDU or BioShark

for yourself or a loved one."  Pl.'s MSJ, Ex. R, at 41:26-41:38.

During another radio show broadcast on May 28, 2010, James

and Patricia Feijo had the following discussion with a caller:

PATRICIA FEIJO: How can we help you?
MARCIA: Well, my mom was just diagnosed with cancer.
PATRICIA FEIJO: Yeah.
JAMES FEIJO: Yeah.  What type, honey?
MARCIA: Huh?
JAMES FEIJO: What type of cancer?
MARCIA: Pancreatic.
JAMES FEIJO: Oh, my.  And what did they say?  What did the
doctors tell her?
MARCIA: Well, they --

JAMES FEIJO: Pretty advanced or what did they say?
MARCIA: Well, right now, I'm supposed to find out Tuesday,
JAMES FEIJO: Mm-hmm.
MARCIA: -- of what stage it's at --
JAMES FEIJO: Mm-hmm.
MARCIA: -- and if it's operable or, you know, what kind of
tumor it is and, if she can, to get chemo or radiation.
JAMES FEIJO: Yeah. Well, let me tell you right off the bat,
chemo's a lie, radiation's a lie.  They've never cured
anybody of pancreatic cancer with their chemo and
radiation.
PATRICIA FEIJO: No, there was a Dr. Kelley.  I have his
little book in my office.  And he healed his own pancreatic
cancer.  Now, Jim --
JAMES FEIJO: So, there are options out there.
PATRICIA FEIJO: He healed himself naturally.  And he begins
his little book with, it was a blessing in disguise that I
didn't have health insurance and couldn't go for chemo or
radiation.
MARCIA: Mm-hmm.
PATRICIA FEIJO: But I just wanted to explain to you,
Marcia, that we're under a cease and desist order.  So, Jim
and Trish at Daniel Chapter One and the other people here,
MARCIA: Mm-hmm.
PATRICIA FEIJO: -- can't tell you what Dr. Kelly did or
what we have done over the years.
MARCIA: Uh-huh.
PATRICIA FEIJO: But, hopefully, someone will call in and --
because they've heard you now and will call in and help you
out with the kind of things naturally that your mom could
do.  And the other thing is you can join our fellowship and
get -- or your mom can directly and get fellowship that
way, get ministry rather.
MARCIA: Mm-hmm.
PATRICIA FEIJO: Some health ministry.
JAMES FEIJO: So, we're going to ask someone to give us a
call right now.  The other thing is, Marcia, you can go to
DanielChapterOneFreedom.com.
MARCIA: Mm-hmm.
JAMES FEIJO: And you can join the DC1 fellowship and people
from all over the country are helping each other, okay?

Pl.'s SMF ¶ 44; *see also* Pl.'s MSJ, Ex. S, at 9:15-11:20.  With

Marcia still on the line, James and Patricia Feijo accepted a

call from a caller named Troy:

JAMES FEIJO: Can you share with Marcia what she can try to
start for her dad?
PATRICIA FEIJO: Mom.
MARCIA: Mom.
JAMES FEIJO: Mom, rather.  And, Marcia, by the way, the
producer will be writing it down, okay?
MARCIA: Okay, thank you.
TROY: Okay, Marcia, here it goes, I'll give you two.
MARCIA: Mm-hmm.
TROY: Two of their prize products are BioShark and the
ever-present 7-Herb Formula.
MARCIA: 7-Herb Formula and BioShark, okay.
TROY: That's two of them right there.
MARCIA: Okay.  And I believe my husband went in to Daniel
Chapter One this morning, as a matter of fact.
JAMES FEIJO: Oh, yeah?
PATRICIA FEIJO: Oh.
MARCIA: And --
JAMES FEIJO: Oh, yes.
MARCIA: Mm-hmm.  And he went and bought some.
JAMES FEIJO: Oh, so you got -- you got the 7-Herb?
MARCIA: Yep.
JAMES FEIJO: Oh, okay, all right.  And then did he get
anything else, too?  Did he get the BioShark that Troy
mentioned?
MARCIA: I believe -- yes, I believe he got the BioShark and
he got some kind of a -- it used to be the AM and PM drink.
JAMES FEIJO: Yes, it's 1st Kings now or ENDO-24.
MARCIA: Mm-hmm.
PATRICIA FEIJO: Yeah.  Is your mom having a hard time
eating, Marcia?
MARCIA: Yes, she is.
PATRICIA FEIJO: Okay, yeah, that's great that he got that
then.
TROY: And another one is TPB.
MARCIA: Okay.  What is that?
. . .
TROY: No, Trish's Special Blend -- Perfect Blend.  Trish's
Perfect Blend, the one we call TPB.
MARCIA: TPB?
PATRICIA FEIJO: Yeah, the TPB.  But what was it your
husband got, the ENDO or the 1st Kings?
MARCIA: He got the -- I think he got the one that has more
protein and vitamins.
. . .
PATRICIA FEIJO: Just so you know, that's interchangeable
for the most part.

MARCIA: Okay.
PATRICIA FEIJO: So, that's good if he got the ENDO-24.
MARCIA: Mm-hmm.
PATRICIA FEIJO: That's awesome then.
JAMES FEIJO: Well, that's awesome.
PATRICIA FEIJO: She can get started and, again, you can join the fellowship for more ministry.  She can join the fellowship directly if she'd like.  Thanks so much, Troy.
JAMES FEIJO: And by the way, that ENDO-24, three heaping scoops three, four times a day is better than food for her right now.
MARCIA: Yeah, exactly.
JAMES FEIJO: And please don't hesitate -- now, Marcia, if you go and join the fellowship, then more people can offer you more help.  This way, Troy, who just called in, was a big help.

Pl.'s SMF ¶ 44; *see also* Pl.'s MSJ, Ex. S, at 11:45-14:20.

During a radio broadcast on February 14, 2011, James Feijo stated: "[y]ou know, our voice has been hindered by the evil of our government. We can't even give true testimony, signed affidavits of people who've cured or healed of cancer.  Satan is alive and well in the FDA and the FTC and in Washington."  Pl.'s SMF ¶ 46; *see also* Pl.'s MSJ, Ex. T, at 14:15-14:30.  Later, James Feijo accepted a call from a caller named Greg, who informed listeners how to find and join the Daniel Chapter One Yahoo Group.  *See* Pl.'s SMF ¶ 47; Pl.'s MSJ, Ex. T, at 24:13-24:40.  James Feijo told Greg to "[t]ell them what the publications are on there -- awesome list, man[,]" and Greg responded by listing several available publications, including "we've got the BioGuide, we've got the Most Simple Guide[.]"  Pl.'s MSJ, Ex. T, at 24:40-25:05.  James Feijo then told

listeners that "there's another site too, besides the Yahoo Group" and Greg responded, "yeah and that's, health, health, let's see, healthfellowship.org[.]"  Pl.'s SMF ¶ 47; *see also* Pl.'s MSJ, Ex. T, at 25:40-25:53.

During a radio show broadcast on February 22, 2011, Defendants accepted a call from a caller named Patricia, who stated that her doctor had found a mass on her breast.  *See* Pl.'s SMF ¶ 49; Pl.'s MSJ, Ex. U, at 7:20-7:45.  James and Patricia Feijo instructed the caller not to get a biopsy, and Patricia Feijo stated that "if it is cancer, it can stir up the cells and can get them to spread[.]"  Pl.'s SMF ¶ 49; Pl.'s MSJ, Ex. U, at 8:38-9:44.  Patricia Feijo told the caller that she should take products "to treat it worst case scenario."  *Id.* Defendants then asked someone to call in to help answer the caller's questions, and accepted a call from a caller named Greg, who said that, for "cancer . . . one thing I would add is BioShark to that."  Pl.'s SMF ¶ 49; Pl.'s MSJ, Ex. U, at 22:35-22:46.  Patricia Feijo confirmed this suggestion, stating, "yeah, definitely."  *Id.*

Finally, during a radio show broadcast on June 23, 2011, the Feijos took a call from an individual who identified himself as Curtis, and who said that his daughter had cancer.  *See* Pl.'s Mot. for Order to Show Cause, Ex. A, at 30:00-30:45.  James Feijo advised Curtis to go online and read the testimonies on

the Daniel Chapter One website to learn more, and stated that

they support "God's way" of treating cancer through the use of 7

Herb Formula, BioShark, and GDU.  *Id.* at 30:45-34:15.  In

addition, James Feijo told Curtis that "the government is trying

to stop us from helping you and your daughter . . . they want to

not let us tell you about 7 Herb Formula, BioShark, and GDU,

that God has given us to help people around the world."  *Id.* at

37:00-38:05.  Patricia Feijo added:

> [W]e do care about your daughter . . . we just heard from
> our lawyer that a judge ruled in favor of the Trade
> Commission, and so, you know, basically we can be fined out
> of existence tonight or, or, put into prison, and we want
> people to know the reality that we're sitting here, willing
> to risk even our lives, to serve the lord and to serve you,
> right, but the situation is such that I would say get the
> product while you can, even stock up while you can, and if
> one day you won't be able to get our products then just,
> you know, try to continue to follow pretty much what those
> products are, the herbs, the enzymes, because that's what
> we have seen work for many years.

*Id.* at 38:05-39:00.  James Feijo then gave Curtis information on

how to order the products, and directed Curtis to the

healthfellowship.org website for more information.  *Id.* at

39:00-40:00.  At other times during this same show, James Feijo

stated that Daniel Chapter One's products, including GDU, were

created and intended by God "for you, for your health and

healing, as a prevention, to mitigate, to treat, to heal, to

cure."  *Id.* at 8:30-9:40.  Patricia Feijo told listeners that

they did not share their experiences with the products "until we

had used it for a while and saw that it did indeed work, and then we began to share with people, hey, this is what works for this and that." *Id.* at 23:10-23:30.  Patricia Feijo stated that the testimonies the Feijos had received from their customers and placed on their website and in their BioGuide were a sampling of their customers' experiences and that the results in the testimonials were "very typical of what people experience." *Id.* at 23:40-24:35.  James and Patricia Feijo went on to describe how 7-Herb Formula had cured a man who had renal cancer.  *See id.* at 24:35-26:45.

### 3.    Competent and Reliable Scientific Evidence

According to the United States -- but as disputed by Defendants -- at the time the above representations were made, Defendants did not possess or rely upon competent scientific evidence, as defined in Part I.A of the Modified Final Order,[6] that substantiated the representations.  *See* Pl.'s SMF ¶ 51.

### 4.    Failure to Mail Notice

Finally, the parties do not dispute that Defendants have failed to send the notice described in Part V.B of the Modified

---

[6] The Modified Final Order defines "competent and reliable scientific evidence" as "tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results."  Pl.'s MSJ, Ex. D, at 1.

Final Order.  *See* Pl.'s SMF ¶ 52; Defs.' Statement of Genuine
Issues ¶ 52.

## II.  LEGAL STANDARDS

### A.  Summary Judgment Pursuant to Rule 56

Summary judgment should be granted only if the moving party
has shown that there are no genuine issues of material fact and
that the moving party is entitled to judgment as a matter of
law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477
U.S. 317, 325 (1986).  "A fact is material if it 'might affect
the outcome of the suit under the governing law,' and a dispute
about a material fact is genuine 'if the evidence is such that a
reasonable jury could return a verdict for the nonmoving
party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008)
(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248
(1986)).  The moving party bears the initial burden of
demonstrating the absence of genuine issues of material fact.
*See Celotex*, 477 U.S. at 323.  In determining whether a genuine
issue of material facts exists, the Court must view all facts in
the light most favorable to the non-moving party.  *See*
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,
587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C.
Cir. 2004).  The party opposing a motion for summary judgment
"may not rest upon the mere allegations or denials of his

pleading, but . . . must set forth specific facts showing that

there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

**B.   Sections 5(l) and 13(b) of the FTC Act[7]**

Section 5(l) of the FTC Act, regarding penalties for

violations of orders, injunctions, and other appropriate

equitable relief, provides:

> Any person, partnership, or corporation who violates an
> order of the Commission after it has become final, and
> while such order is in effect, shall forfeit and pay to the
> United States a civil penalty of not more than $ 10,000 for
> each violation, which shall accrue to the United States and
> may be recovered in a civil action brought by the Attorney
> General of the United States.  Each separate violation of
> such an order shall be a separate offense, except that in
> the case of a violation through continuing failure to obey
> or neglect to obey a final order of the Commission, each
> day of continuance of such failure or neglect shall be
> deemed a separate offense.  In such actions, the United
> States district courts are empowered to grant mandatory
> injunctions and such other and further equitable relief as
> they deem appropriate in the enforcement of such final
> orders of the Commission.

15 U.S.C. § 45(l).

Section 13(b) of the Act states, in relevant part:

> Whenever the Commission has reason to believe
>     (1) that any person, partnership, or corporation is
>     violating, or is about to violate, any provision of law
>     enforced by the Federal Trade Commission, and
>     (2) that the enjoining thereof pending the issuance of a
>     complaint by the Commission and until such complaint is
>     dismissed by the Commission or set aside by the court on
>     review, or until the order of the Commission made

---

[7] The United States also brings this action pursuant to
Section 16(a) of the FTC Act, 15 U.S.C. § 56(a).  That provision
sets forth the procedures for the exercise of the Commission's
and the Attorney General's authority to litigate.

> thereon has become final, would be in the interest of
> the public
>
> the Commission by any of its attorneys designated by it for
> such purpose may bring suit in a district court of the
> United States to enjoin any such act or practice.  Upon a
> proper showing that . . . such action would be in the
> public interest, and after notice to the defendant, a
> temporary restraining order or a preliminary injunction may
> be granted without bond . . . .  [I]n proper cases the
> Commission may seek, and after proper proof, the court may
> issue, a permanent injunction.

15 U.S.C. § 53(b).

The FTC Act entrusts the administration of the Act to the FTC as "a body of experts."  *FTC v. Morton Salt Co.*, 334 U.S. 37, 54 (1948).  "The enforcement responsibility of the courts, once a Commission order has become final . . . is to adjudicate questions concerning the order's violation, not questions of fact which support that valid order."  *Id.* (internal citations omitted); *see also United States v. H. M. Prince Textiles, Inc.*, 262 F. Supp. 383, 388 (S.D.N.Y. 1966) ("[I]t is well settled that a defendant cannot attack a final cease and desist order in a subsequent enforcement proceeding."); *United States v. Vitasafe Corp.*, 212 F. Supp. 397, 398 (S.D.N.Y. 1962) (same). In an action by the government to recover civil penalties "[a]ll that the government need prove is that a cease and desist order has in fact been violated[.]"  *H. M. Prince Textiles*, 262 F. Supp. at 388.

**III. ANALYSIS**

In response to the United States' Motion for Summary Judgment, Defendants argue -- without setting forth their own specific facts in response -- that six issues of material fact bar summary judgment at this stage.  Specifically, Defendants dispute that:

1.   Defendants controlled the content published on the website http://www.dc1freedom.com/guilty-of-healing-cancer from April 2, 2010 through June 6, 2011;

2.   Defendants controlled the content published on the website http://dc1fellowship.com/forum/viewtopic.php?f=1&t=291 and had administrative privileges to remove content published on this website from April 2, 2010 through June 6, 2011;

3.   Defendants controlled the content published on http://healthfellowship.org/thread-313.html and had administrative privileges to remove content published on this website from April 2, 2010 to June 6, 2011;

4.   Defendants controlled the content published on the website http://health.groups.yahoo.com/group/danielchapterone/files/ and had the administrative privileges to remove content published on this website from April 2, 2010 through June 6, 2011;

5.   Defendants controlled the audio content published on the Daniel Chapter One Healthwatch feed, http://feeds.thepodzone.com/dc1hw, from April 2, 2010 through June 6, 2011;

6.   At the time the representations on Defendants' websites and radio shows were made, Defendants did not possess or rely upon competent and reliable scientific evidence, as defined in Part I.A of the Modified Final Order, that substantiated the representations.

*See* Defs.' Opp'n to Pl.'s MSJ at 6-10; Defs.' Statement of Genuine Issues ¶¶ 21, 25, 28, 31, 38, and 51.[8]

However, Defendants admitted three of these issues during the contempt hearings in this case and in their subsequent certifications filed with the Court.   In particular, Defendants admitted that they control the content published on www.dc1freedom.com (disputed issue 1),[9] and that they control the audio content published on the Daniel Chapter One Healthwatch feed (disputed issue 5).[10]   *See* James Feijo's Certification of Compliance with Order at ¶¶ 7, 16, Docket No. 51.   In addition, by conceding that they had violated Part II of the Modified Final Order, Defendants conceded that, at the time representations on these websites and radio shows were made,

---

[8] Both in their Opposition and during the contempt hearing, Defendants conceded that they had not mailed the notice required in Part V.B of the Modified Final Order.  *See* Defs.' Statement of Genuine Issues ¶ 52.  Subsequent to the contempt hearing, Defendants certified that they had mailed the notice, as of May 18, 2012.  *See* James Feijo's Certification of Compliance with Order, Docket No. 51.  Defendants' failure to mail the notice between April 2, 2010 and May 18, 2012 constitutes a violation of the Modified Final Order for which Defendants are liable. Accordingly, the Court will **GRANT** as conceded the United States' Motion for Summary Judgment on Liability as to Count II (Failure to Mail Notice).

[9] Defendants also admitted that they control the content published on www.danielchapterone.com and www.dc1ministry.com.

[10] The Daniel Chapter One Healthwatch feed was also previously accessible through www.danielchapterone.com, which Defendants admitted at the hearing that they controlled.  *See* Pl.'s Reply at 4.

Defendants did not possess or rely upon competent and reliable scientific evidence to substantiate those representations (disputed issue 6). *See id.* at ¶ 1 ("We have ceased from making prohibited representations, as described in Part II of the Modified Final Order, on our radio show and on any websites that are within our control. We have ceased from directing potential customers to websites that are not in our control but which contain prohibited representations, as described in Part II of the Modified Final Order. We have worked diligently to remove the prohibited representations, as described in Part II of the Modified Final Order, from the websites within our control.").[11]

---

[11] In addition, Defendants would be collaterally estopped from arguing in this proceeding that they possess and rely upon competent and reliable scientific evidence. "[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a difference cause of action involving a party to the first case." *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). A prior holding has preclusive effect when (1) the same issue being raised was contested by the parties and submitted for judicial determination in the prior case; (2) the issue was actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case would not work a basic unfairness to the party bound by the first determination. *See Yamaha*, 961 F.2d at 254 (citing *McLaughlin v. Bradlee*, 803 F.2d 1197, 1201 (D.C. Cir. 1986); Restatement (Second) of Judgments § 27 (1982)). The Supreme Court has held that judgments of administrative agencies should be given preclusive effect if the agency was acting in a judicial capacity, such as in cases where the agency provides a full and fair opportunity to litigate the claim. *See Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797-98 (1986. The products and representations at issue in this action are identical to the products and representations that the FTC considered. The

With respect to the other three disputed issues, Defendants affirmatively denied that they control the content published on http://dc1fellowship.com, http://healthfellowship.org, and http://health.groups.yahoo.com/group/danielchapterone (the Yahoo Group) (disputed issues 2, 3, and 4).  Defendants admitted, however, that they directed callers to these websites.  *See* James Feijo's Certification of Compliance with Order at ¶ 13.  Moreover, the excerpts of radio broadcasts from May 28, 2010 and February 14, 2011 provide independent evidence that James Feijo directed listeners to all three of these websites, which is a separate violation of the Modified Final Order.  In particular, Part II of the Modified Final Order specifies that Defendants, "directly or through any corporation, partnership, subsidiary,

---

administrative law judge in the FTC action determined that Defendants did not possess or rely upon competent and reliable scientific evidence to substantiate their claims that the Products treated or cured cancer.  This issue was actually and necessarily determined by the FTC, and indeed, the Court of Appeals reviewed and affirmed that determination.  *See Daniel Chapter One*, 405 F. App'x at 506 ("Because it is undisputed [Daniel Chapter One] did not support its claims with 'competent and reliable scientific evidence' including clinical trials with human subjects, the Commission properly concluded [Daniel Chapter One's] advertisements were deceptive for want of a reasonable basis.").  Finally, the Court finds that applying collateral estoppel in this case would not work a basic unfairness to Defendants because they were able to fully present their arguments in the proceeding before the Commission and the D.C. Circuit regarding these same issues.  *See, e.g.*, *Morgan v. FAA*, 657 F. Supp. 2d 146, 153 (D.D.C. 2009) (applying issue preclusion where Merit Systems Protection Board determined the same issues and that ruling was affirmed by the Federal Circuit).

division, trade name, or other device," are barred from making certain representations about the Products.  Pl.'s MSJ, Ex. D, at 2.  By referring to and directing listeners to these websites during their radio broadcasts, Defendants were using the websites as a "device" through which they were able to convey the prohibited representations.

Even if Defendants' act of directing listeners to the remaining three websites did not constitute a violation of the Modified Final Order, these issues are not material to the conclusion that Defendants violated the Modified Final Order.[12] At the contempt hearing, the Court concluded that there was clear and convincing evidence that Defendants had violated Part II of the Modified Final Order by (1) continuing to make representations on their radio show that their products treat or cure cancer without competent and reliable scientific evidence to substantiate those representations, (2) encouraging potential customers to visit websites containing Daniel Chapter One publications that contain prohibited information and endorsements of the prohibited supplements, and (3) not removing certain representations from the websites within their control, which Defendants conceded included www.danielchapterone.com, www.dc1ministry.com, and www.dc1freedom.com.  *See* Order Holding

---

[12] The Court therefore need not draw an adverse inference from Defendants' invocation of the Fifth Amendment.

Daniel Chapter One, James Feijo and Patricia Feijo in Civil
Contempt at 2-3, Docket No. 50.   Notably, Defendants nowhere
dispute that the representations made on these websites and
their radio shows constituted violations of the Modified Final
Order.

Indeed, the examples provided by the United States only
further support the conclusion that Defendants violated the
Modified Final Order.   For example, during the May 27, 2010
radio broadcast, James Feijo made representations that BioShark
was an effective treatment to shrink tumors.   Pl.'s SMF ¶ 41;
*see also* Pl.'s MSJ, Ex. R.   In addition, Defendants accepted
calls from other individuals who recommended using the Products
to treat stage 4 lung cancer, and Defendants affirmed those
recommendations.   *See, e.g.*, Pl.'s SMF ¶ 41; *see also* Pl.'s MSJ,
Ex. R, at 22:54-23:34 ("JAMES FEIJO: . . . see, let me share one
thing.   The suggestions Bob just gave you, Phil, everybody
listening, are suggestions to boost God's order that he has
given us, our immune system, to fight the disease state of any
situation.").   James Feijo's statements unquestionably violated
Part II of the Modified Final Order.   In addition, the advice
provided by other callers regarding the use of the Products
constituted "endorsements," as prohibited by the Modified Final
Order, because listeners were likely to believe that the
information provided "reflects the opinions, beliefs, findings,

32

or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party are identical to those of the sponsoring advertiser." 16 C.F.R. § 255.0(b). Similarly, during the May 28, 2010 broadcast, Defendants encouraged a caller to provide advice about using the Products to treat pancreatic cancer, and Defendants affirmed and contributed to that advice. *See* Pl.'s SMF ¶ 44; *see also* Pl.'s MSJ, Ex. S, at 9:15-14:20. These representations and endorsements violated Part II of the Modified Final Order. Additionally, the June 23, 2011 radio broadcast contained numerous representations in violation of Part II of the Modified Final Order, including James Feijo's statement that Defendants support "God's way of treating cancer through the use of 7 Herb Formula, BioShark, and GDU." Pl.'s Mot. for Order to Show Cause, Ex. A, at 30:45-34:15.

Therefore, the Court concludes that the record is replete with evidence that Defendants have violated the Modified Final Order. The FTC Act authorizes awards of monetary civil penalties, mandatory injunctive relief, and other equitable relief for violations of final orders of the Commission. *See* 15 U.S.C. §§ 45(l), 53(b). Accordingly, there is no genuine issue as to any material fact and the United States is entitled to judgment as a matter of law on liability as to Counts I (Prohibited Representations) and II (Failure to Mail Notice).

33

## IV.  CONCLUSION

For the foregoing reasons, the United States' Motion for Summary Judgment on Liability is hereby **GRANTED**.  The Court will direct the parties to file recommendations for further proceedings, including a proposed briefing schedule, if applicable, regarding the appropriate penalty or penalties.  A separate Order accompanies this Memorandum Opinion.

**SIGNED:**    **Emmet G. Sullivan**
**United States District Judge**
**September 24, 2012**